Cause No. _____

| | | |
|---|---|---|
| GREGORY C. FREEMAN AND | § | IN THE DISTRICT COURT |
| CHRISTINA FREEMAN | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| FREEDOM MORTGAGE | § | |
| CORPORATION | § | |
| *Defendant*. | § | OF HARRISON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, Gregory C. Freeman and Christina Lynne Freeman (unless otherwise noted, collectively the "**Plaintiffs**"), file their *Original Petition* against Defendant Freedom Mortgage Corporation (the "**Defendant**"), as follows:

### Discovery Control Plan Level

1.      Discovery will be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction because the amount in controversy is within the limits of this court.  This court has jurisdiction over the parties because the Defendant is actively involved and doing business in Texas.

3.      Venue is appropriate in this court pursuant to Tex. Civ. Prac. & Rem. Code §15.002(a)(1) and §15.011 because the Plaintiffs reside in Harrison County, Texas, and the subject property is located in Harrison County, Texas.

### Claim for Relief

4.  Plaintiffs seek monetary relief over $200,000. but not more than $1,000,000.

**PLAINTIFFS' ORIGINAL PETITION – Page 1**

**Conditions Precedent**

5.      All conditions precedent have occurred or have been performed under Rule 54 of the Texas Rules of Civil Procedure.

**Parties**

6.      Plaintiffs are individuals who reside in Harrison County, Texas and may be served with process on the undersigned legal counsel.

7.      Defendant is a corporation formed under the laws of the State of New Jersey which conducts business in Harrison County, Texas and may be served with process on its registered agent as follows:

> Freedom Mortgage Corporation
> c/o CT Corporation System
> 350 N. St. Paul Street, Suite 2900
> Dallas, Texas 75201

**Facts**

8.      On November 20, 2013, Plaintiff, Mr. Freeman, executed a promissory note (the "**Note**") in the original principal amount of $161,519.00.  The Note is secured against the real property located at 1306 Mission Creek Drive, Longview, Texas 75601 (the "**Property**") by a deed of trust (the "**DOT**").  The DOT was recorded in the Harrison County property records on November 22, 2013.

9.      In 2014, Mr. Freeman became unable to work; he applied for loss mitigation assistance through his lender at the time, and he applied for disability benefits.  In 2015, Defendant purchased the Note and accepted Mr. Freeman into a trial loss mitigation program.  In the Summer of 2015, Mr. Freeman became approved for disability benefits.  Mr. Freeman was unable to make mortgage payments while his disability application was pending; however, Mr. Freeman resumed making mortgage payments again around the Fall of 2015.

**PLAINTIFFS' ORIGINAL PETITION – Page 2**

10.     Although Mr. Freeman paid his mortgage payment in October, November, and December of 2015, Defendant notified Mr. Freeman that his payments had not been received for those months. As a result, Mr. Freeman's account was placed into default status.

11.     In February 2016, Defendant informed Mr. Freeman that he should reapply for loss mitigation assistance; when Mr. Freeman reapplied, as Defendant requested, Defendant denied Mr. Freeman's application for loss mitigation assistance alleging disability income was not an approved source of income. Mr. Freeman subsequently contacted the United States Department of Housing and Urban Development ("**HUD**") for their assistance regarding the denial of loss mitigation assistance; HUD informed Mr. Freeman that disability income *was* an approved source of income for loss mitigation assistance.

12.     On March 1, 2016, Defendant initiated foreclosure proceedings on the Property for the first time; those proceedings resulted in a foreclosure of the Property. Following the foreclosure, Defendant notified Mr. Freeman's homeowner's insurance company that Mr. Freeman no longer owned the Property; Mr. Freeman's insurance company canceled the policy covering the Property. Mr. Freeman was not notified that the homeowner's insurance policy had been canceled.

13.     On March 10, 2016, Mr. Freeman sent a letter to Defendant demanding the March 1, 2016 foreclosure be rescinded, and provided evidence that payments were made in October, November, and December of 2015. Defendant offered to reverse the foreclosure if three payments were wired to Defendant; Mr. Freeman paid the three payments to secure the Property. Defendant subsequently reversed the foreclosure and all title and interest to the Property returned to Mr. Freeman. Despite reversing the foreclosure, Defendant filed to evict Mr. Freeman from the Property; however, eviction was stopped.

14.     On August 30, 2016, Defendant executed a Loan Modification Agreement ("**LMA**") whereby the terms of the Note and DOT were modified.  The LMA provided that $132,593.94 was due and owing under the Note and DOT as of October 1, 2016, and repayment would be through 360 monthly payments of $622.02 beginning on October 1, 2016 and continuing until September 1, 2046, at which time all remaining amounts would become fully due and payable.

15.     In March of 2017, Mr. Freeman received a default letter from Defendant stating that his January and February 2017 payments were not received; Mr. Freeman sent copies of the checks mailed to Defendant.  Mr. Freeman learned that Defendant conducted an escrow analysis on the Property and determined that the property taxes were going to triple in the coming year; Defendant determined that Mr. Freeman should be paying triple the amount of money into escrow. Defendant's analysis and determination significantly increased Mr. Freeman's total monthly payment from approximately $1,180.00 to approximately $1,600.00 per month.  Defendants' escrow analysis was not correct, and although Mr. Freeman kept making payments to Defendant, Defendant insisted Mr. Freeman was in arrears because he was not paying the higher escrow amount.

16.     In May or June of 2017, the Property was damaged by a tornado.  Mr. Freeman contacted his homeowner's insurance company to file a storm related insurance claim and, for the first time, learned his policy had been canceled as a result of the previous foreclosure.  Even though payments to Defendant included a specific amount for homeowner's insurance, Defendant informed Mr. Freeman that it was his obligation to insure the Property.

17.     In June of 2017, Defendant finally informed Mr. Freeman that the escrow analysis indicated the increase was for a deficit in the prior year's taxes, and not an increase of future taxes.

**PLAINTIFFS' ORIGINAL PETITION – Page 4**

In July 2017, Defendant indicated they were starting foreclosure proceedings again. Mr. Freeman contacted HUD; HUD informed Mr. Freeman that money was not owed for a previous tax year deficit, as Defendant should have included the appropriate escrow amount in the refinance during the loss mitigation process. HUD ordered Defendant to stop the foreclosure process and Defendant complied.

18. Defendant then started demanding payments. Defendant insisted the January and February 2017 payments were not completely paid; further, Defendant determined a payment from September of 2016 was missing. Defendant placed the account back into default status and, once again, initiated foreclosure proceedings. This time, the foreclosure proceedings resulted in a sale date of early Summer 2017; however, this sale date was dismissed.

19. During the next several months, Mr. Freeman continued to submit financial documents to Defendant in response to their requests for information relating to mortgage modification. In February 2018, Mr. Freeman entered into an agreement with Defendant. Defendant agreed to allow for another loss mitigation program; additionally, Defendant agreed to provide Mr. Freeman with proof of insurance coverage for the timeframe when the house was damaged, and Defendant agreed to assist Mr. Freeman in pursuing damages against the homeowner's insurance company for canceling the homeowners policy without notice. Defendant did not follow through with the promises made.

20. Instead, on July 3, 2018, Defendant foreclosed on the Property for a second time, and the Plaintiffs received *Notice of a Suit to Evict* along with a letter indicating they were no longer entered into a loss mitigation program. This eviction suit is currently pending and is set for hearing on January 21, 2020.

21. Plaintiffs subsequently hired the undersigned Counsel, who requested that

**PLAINTIFFS' ORIGINAL PETITION – Page 5**

Defendant contractually reinstate the mortgage loan.

22.     The Defendant communicated to the undersigned Counsel that the mortgage loan could be contractually reinstated if the Plaintiffs paid $27,995.37; however, once the Plaintiffs collected $27,995.37 and less than 3 months later, Defendant stated Plaintiffs would actually need to pay $50,172.45 to reinstate the mortgage loan.  Although an explanation was requested, none was provided.

**First Cause of Action:**<br>**<u>Breach of Contract</u>**

23.     Plaintiffs incorporate, by reference, the allegations made above as if set forth fully herein.

24.     The actions committed by Defendant constitute a breach of contract because:

  a.   There exists a valid, enforceable contract between Plaintiffs and Defendant;

  b.   The Plaintiffs have standing to sue for breach of contract;

  c.   The Plaintiffs have substantially performed, tendered performance, or were excused from performing their contractual obligations;

  d.   Defendant breached the contract; and

  e.   Defendant's breach of the contract caused Plaintiffs' injuries beyond the jurisdiction of the Court.

**Second Cause of Action:**<br>**<u>Negligence</u>**

25.     Plaintiffs incorporate, by reference, the allegations made above as if set forth fully herein.

26.     The actions committed by Defendant constitute negligence because:

  a.   Defendant owed Plaintiffs the duty of good faith and fair dealing;

b.  Defendant breached the duty owed to Plaintiffs by, among other reasons, failing to properly apply the Plaintiffs' payments and administer their escrow account; and

c.  The breach proximately caused the Plaintiffs' injuries.

### Third Cause of Action:
### Wrongful Foreclosure

27.  Plaintiffs incorporate by reference the allegations made above as if set forth fully herein.

28.  The actions of Defendant constituted wrongful foreclosure because:

a.  A defect exists in the foreclosure sale proceedings conducted by the Defendant; and

b.  A causal connection exists between the defect in the foreclosure sale proceedings and the grossly inadequate selling price paid by the Defendant at the foreclosure proceedings.

### Fourth Cause of Action:
### Slander of Title

29.  Plaintiffs incorporate by reference the allegations made above as if set forth fully herein.

30.  The actions committed by Defendant constitute slander of title because:

a.  Plaintiffs possessed an estate or interest in the Property;

b.  Defendant uttered and published a disparaging statement about the title of the Property by filing recording documents with the Harrison County Real Property Records.

c.  The statement was false;

**PLAINTIFFS' ORIGINAL PETITION – Page 7**

    d.    The statement was published with legal malice; and

    e.    The publication caused special damages.

**Fifth Cause of Action:**
**Breach of Fiduciary Duty**

31.    Plaintiffs incorporate, by reference, the allegations made above as if set forth fully herein.

32.    The Defendant owed a duty of good faith and fair dealing to the Plaintiffs regarding the collection, accounting and payment of escrow advances to the local taxing authorities and on insurance premiums.

33.    The Defendant breached their duty to the Plaintiffs by failing to properly apply and account for such payments.

34.    The Plaintiffs suffered damages as a proximate result of the Defendant's breach of their fiduciary duty owing to Plaintiffs.

**Sixth Cause of Action**
**Declaratory Action**

35.    Plaintiffs incorporate, by reference, the allegations made above as if set forth fully herein.

36.    Plaintiffs believe and have good reason to believe that the foreclosure of lien conducted by the Defendant should be set aside. Defendant disagrees.

37.    Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, the Plaintiffs seek a declaratory judgment from this Court declaring that the foreclosure was wrongful *ab initio* and reversing the wrongful foreclosure sale that occurred against the Property on July 3, 2018, vesting all rights, title and interest to the Property back to the Plaintiffs.

**Damages:**
**Actual Damages**

38.     The Plaintiffs are entitled to recover their actual damages from Defendant.

**Damages:**
**Special Damages**

39.     The Plaintiffs are entitled to recover their special damages from Defendant.

**Attorneys' Fees**

40.     The Plaintiffs were forced to employ the undersigned attorneys to represent them and have agreed to pay reasonable attorneys' fees for their services.  The Plaintiffs are entitled to recover their reasonable attorneys' fees under Chapter 38 of the Texas Civil Practices & Remedies Code.

**Request for Disclosures**

41.     Plaintiffs hereby request Defendant to disclose within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

**Application for Injunctive Relief**

42.     Plaintiffs hereby request temporary injunctive relief.   To obtain temporary injunctive relief, an applicant must plead and prove three elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent and irreparable injury in the interim.  *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968*); Garcia–Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 375 (Tex.App.-Corpus Christi 1999, no pet.); *Kaplan v. Tiffany Dev. Corp.*, 69 S.W.3d 212, 218 (Tex. App.—Corpus Christi 2001, no pet.).

43.     To the extent, not inconsistent herewith, the Plaintiffs incorporate, by reference, the allegations made above as if set forth fully herein.  The Plaintiffs have plead and proven a cause

of action against the Defendant, as outlined above; additionally, the Plaintiffs have demonstrated a probable right to relief.  The applicant for temporary injunctive relief is not required to establish final successful litigation.  *Sun Oil*, 424 S.W.2d at 218; *Center for Econ. Justice v. Amer. Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex.App.-Austin 2001, no pet. h.).  Instead, the applicant's burden is to establish a probable right to recover following a trial on the merits and a probable injury in the interim that warrants preserving the status quo.  *Walling*, 863 S.W.2d at 57; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex.App.-Austin 2000, no pet.); *Kaplan v. Tiffany Dev. Corp.*, 69 S.W.3d 212, 218 (Tex. App.—Corpus Christi 2001, no pet.).

44.     Defendant has caused an action to be filed in the Justice of the Peace Court, Precinct 3, Hallsville, Texas (the "**Eviction Action**").  The Eviction Action is set for trial on January 21, 2020, notice is attached hereto as **Exhibit "1"** and is incorporated herein by reference and verifies the allegations in this Petition.  The result of that action, if nothing is done to prevent it from taking place, will be to evict Plaintiffs from the residence in which they reside and which is the subject of this action.

45.     Unless the Defendant is enjoined, the Plaintiffs will suffer probable harm which is imminent and irreparable.  If the Eviction Proceeding is not stopped, Defendant will force Plaintiffs from the Property and/or may cause the Property to be sold during the pendency of this action.  This will deprive Plaintiffs of occupancy, which Defendant has recognized for a long time, and eventual ownership of the Property and potentially causing the Plaintiffs to be dispossessed of the Property.  Plaintiffs have no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail himself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

46.     Therefore, the Plaintiffs request that this Court issue a <u>Temporary Restraining</u>

Order and, thereafter, a Temporary Injunction, to enjoin and restrain the Defendant from selling the Property as well as from taking any legal action to evict the Plaintiff and any other occupants from the aforementioned property or enforcing a writ of possession regarding the Property until this lawsuit is concluded.

47.     The Plaintiff is likely to prevail on the merits of the lawsuit as described above because they have been severely damaged by Defendant's wrongful conduct, all of which has been established through the affidavit of Mr. Freeman which is attached hereto as **Exhibit "2"** and which is incorporated herein, by reference, and verifies the allegations in this Petition.

48.     Given that Defendant's conduct is clearly actionable and Defendant has taken a casual and non-aggressive approach to Plaintiffs' occupying the Property and have passed the trial on the Eviction Action many times to date, together with the fact that Plaintiffs have continued to maintain the property in good order, it is impossible to conclude that the harm to Defendant by a grant of injunctive relief would outweigh the necessity that the relief be accorded Plaintiffs.

49.     The granting of the relief requested is not inconsistent with public policy considerations.

50.     The Plaintiffs further request that, upon trial on the merits, the Defendant be permanently enjoined from the same acts listed above.

### Bond

51.     The Plaintiff is willing to post a reasonable temporary restraining order bond and request that the Court set such bond.  However, the Court should consider that the issue at bar involves real property is fully insured against loss and will be preserved by Plaintiffs throughout the proceedings.

## **Request for Relief**

Plaintiffs respectfully request that:

a.  The Defendant be cited to appear and answer herein;

b.  The Court conduct a hearing on the Plaintiff's Application for Injunctive Relief;

c.  A temporary restraining order be issued restraining the Defendant, their agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with them who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 1306 Mission Creek, Longview, Texas 75601  as well as from taking any legal action to evict the Plaintiff and any other occupants from the aforementioned property or enforcing a writ of possession regarding the aforementioned property;

d.  A Permanent Injunction be entered restraining the Defendant from the same acts listed in Paragraph C above; and

e.  Upon final hearing or trial hereof, the Court order a judgment in favor of the Plaintiffs against Defendant Corporation for actual damages, special damages, reasonable attorneys' fees, and all costs of court, and such other and further relief, both general and special, at law or in equity, to which the Plaintiff may be entitled.

Dated: January 15, 2020                                 Respectfully submitted,

                                                        AKERLY LAW PLLC


                                           By:      */s/ Bruce W. Akerly*
                                                    Bruce W. Akerly
                                                    Texas Bar No. 00953200

                                                    */s/ Carrie R. McNair*
                                                    Carrie R. McNair
                                                    Texas Bar No. 24110715

                                                    878 S. Denton Tap Rd., Suite 100
                                                    Coppell, Texas 75019
                                                    469-444-1878 Main
                                                    bakerly@akerlylaw.com
                                                    cmcnair@akerlylaw.com

                                                    ATTORNEYS FOR PLAINTIFFS


**PLAINTIFFS' ORIGINAL PETITION – Page 12**